**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSEPH ANTHONY BERNARDO,
*Defendant-Appellant.*

No. 15-50289

D.C. No.
3:15-cr-00614-BEN-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
March 7, 2016—Pasadena, California

Filed April 13, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges and Frederic Block,[*] Senior District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Frederic Block, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a sentence for bringing an unlawful alien into the United States and aiding and abetting, the panel held that the district court did not err in determining that transporting a person by strapping her inside a compartment behind a vehicle dashboard created a substantial risk of death or serious harm, and therefore did not err in applying a six-level enhancement pursuant to U.S.S.G. § 2L1.1(b)(6).

### COUNSEL

Grant L. Eddy (argued), Chula Vista, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney, Peter Ko, Assistant United States Attorney, Lawrence E. Spong (argued), Assistant United States Attorney, for Plaintiff-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

IKUTA, Circuit Judge:

Joseph Bernardo appeals the district court's application of a six-point upward adjustment to his offense level for "recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(6). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

On February 15, 2015, while Bernardo was waiting in line at the San Ysidro Port of Entry, a dog alerted to his Ford Windstar van. An officer conducted an inspection of the vehicle and found a woman hidden in a compartment behind the dashboard. A heavy-duty cargo strap around the mid-section of the woman's body strapped her in and held her up in the compartment. After the officer cut the strap with his knife, the woman climbed out of the compartment. She appeared alert and unharmed. Upon questioning, she told the officer that she was a citizen of Mexico and that Bernardo had agreed to smuggle her into the United States illegally.

The government charged Bernardo with bringing an unlawful alien into the United States in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) and aiding and abetting an offense against the United States in violation of 18 U.S.C. § 2. He pleaded guilty to both charges without a plea agreement.

According to the presentence investigation report (PSR), Bernardo's violation of 8 U.S.C. § 1324 had a base offense level of 12. U.S.S.G. § 2L1.1(a)(3). The PSR recommended that the offense level be increased to 18 under § 2L1.1(b)(6)

of the Guidelines, which requires such an increase if "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." According to the PSR, the manner in which the woman had been smuggled into the United States was "an inhumane manner in which to transport a person in an area not meant for human transport and created a substantial risk of death or serious bodily injury." The PSR also recommended a two-level reduction for acceptance of responsibility under § 3E1.1(a). The resulting total offense level of 16 corresponded to a Guidelines range of 33 to 41 months, but the PSR recommended a lower sentence of 24 months and a three-year period of supervised release.

Bernardo filed objections to the PSR's proposed enhancement under § 2L1.1(b)(6). He argued that the heavy-duty cargo strap holding the alien "was used to prevent injury should an accident occur," that the "alien was not uncomfortable," and that she was able to climb out of the compartment using her own strength.

The district court held a sentencing hearing on June 15, 2015, noting that it had reviewed the PSR's sentencing recommendation and the parties' arguments. At the hearing, Bernardo's counsel conceded that strapping the woman in the dashboard compartment was "extremely serious" and agreed that it constituted "pretty egregious conduct," but he argued that the PSR's proposed enhancement of the offense level to 18 was improper because transporting an alien in the dashboard compartment neither increased the risk of an accident nor substantially increased the alien's chance of serious bodily injury or death. The district court rejected this argument, concluding that being strapped inside a dashboard was "an extremely precarious position to put an individual in"

and raised a "substantial risk situation." Accordingly, the district court imposed the enhancement.

The district court subsequently granted the government's motion to decrease the offense level by two levels in light of Bernardo's substantial assistance, *see* U.S.S.G. § 5K1.1, resulting in an adjusted offense level of 13 with a Guidelines range of 24–30 months. At a sidebar during the sentencing hearing, the government moved for a further downward variance. In consideration of the relevant factors under 18 U.S.C. § 3553, the district court imposed a 16-month sentence, along with a three-year period of supervised release.

## II

On appeal, Bernardo argues that the district court erred in applying the six-point upward adjustment for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" under § 2L1.1(b)(6).

We review the district court's factual findings for clear error and its interpretation of the Sentencing Guidelines de novo. *United States v. Smith*, 719 F.3d 1120, 1123 (9th Cir. 2013). There is a longstanding intracircuit conflict as to whether we review the district court's application of the guidelines to the facts de novo or for abuse of discretion, *United States v. Sullivan*, 797 F.3d 623, 641 n.13 (9th Cir. 2015), but because we would reach the same conclusion here under either standard, we need not call this case en banc to resolve the conflict.

"Even though the Guidelines are advisory, they are still the 'starting point and the initial benchmark' for the sentencing process." *United States v. Ellis*, 641 F.3d 411,

415 (9th Cir. 2011) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). Therefore, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). We interpret the Guidelines as we would binding federal regulations and interpret the commentary in the Guidelines like "an agency's interpretation of its own legislative rules." *Stinson v. United States*, 508 U.S. 36, 44–45 (1993). Thus, the "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Martin*, 796 F.3d 1101, 1108 (9th Cir. 2015) (quoting *Stinson*, 508 U.S. at 38); *see also United States v. Jackson*, 697 F.3d 1141, 1146 (9th Cir. 2012).

A

The Guidelines section applicable to Bernardo's offense of conviction, § 2L1.1, specifies the base offense level and enhancements for offenses involving smuggling, transporting, or harboring an unlawful alien. Section 2L1.1(b)(6) of the Guidelines provides: "If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18." An offense qualifies for such an enhancement if it meets the criteria set forth in Note 5 of the Application Notes to the Guidelines, which states, in pertinent part:

> Reckless conduct to which the adjustment from subsection (b)(6) applies includes a wide variety of conduct (e.g., transporting persons

in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel; harboring persons in a crowded, dangerous, or inhumane condition; or guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements).

U.S.S.G. § 2L1.1 cmt. n.5. Because the Application Note is not inconsistent with or a plainly erroneous reading of § 2L1.1(b)(6), we defer to its reasoning. *Stinson*, 508 U.S. at 38. For instance, we have held that the transportation of aliens in overcrowded vehicles, where the aliens lacked seats or seatbelts, meets the criteria of "carrying substantially more passengers than the rated capacity of a motor vehicle [or] harboring persons in a crowded, dangerous, or inhumane condition," which is sufficient to create a substantial risk of death or serious bodily injury. *United States v. Ramirez-Martinez*, 273 F.3d 903, 916 (9th Cir. 2001) (quoting U.S.S.G. § 2L1.1 cmt. n.5), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007); *see also United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027–28 (9th Cir. 2000).

We have noted that there is a baseline risk inherent in all vehicular travel, and we "focus on the ways in which the method of transporting the alien increased the risk of death or injury beyond that faced by a normal passenger." *United States v. Torres-Flores*, 502 F.3d 885, 889 (9th Cir. 2007). The examples provided in Application Note 5 represent the "kinds of risks [that] substantially increase a concealed passenger's chances of injury or death over and above the

normal danger of vehicular travel." *Id.* at 890. Accordingly, offense conduct may meet the criteria of § 2L1.1(b)(6) if it involves similar types of risks. *Id.* For instance, offense conduct that involves transportation over a more dangerous route, a dangerous manner of driving, an unsafe vehicle, insufficient ventilation, a risk of injury from moving mechanical parts, or an increased risk "that an accident, if it should occur, would cause injury or death (e.g., passengers transported in a manner that makes them more likely to be injured by crumpled metal or shattered glass than if they had been seated normally)," may meet the criteria of § 2L1.1(b)(6). *Id.*; *see also United States v. Miguel*, 368 F.3d 1150, 1155–56 (9th Cir. 2004); *United States v. Garcia-Guerrero*, 313 F.3d 892, 896–97 (5th Cir. 2002). By contrast, transporting aliens in the hatchback area of a vehicle, without more, does not give rise to a "substantial risk of death or serious bodily injury" because unlike being locked in the trunk of a car, an alien "easily could extricate himself" from a hiding place under a hatchback cover. *United States v. Dixon*, 201 F.3d 1223, 1233–34 (9th Cir. 2000); *see also Miguel*, 368 F.3d at 1155 (distinguishing a closed trunk from a trunk with the back seat pushed down such that it was open to the main cabin of the car). Similarly, transporting an alien covered by carpeting behind the back seat of an extended-cab pickup truck did not involve "a substantial risk of death or serious bodily injury" because transportation in a vehicle that "had been modified to create additional space for a passenger to hide behind the back seat," created an incremental risk to the alien "only in the highly unlikely event of an accident." *Torres-Flores*, 502 F.3d at 889–91.

### B

We now consider whether the district court erred in applying § 2L1.1(b)(6) to the facts of this case.

The district court found that transporting a person by strapping her inside a dashboard was neither safe nor comfortable but rather "extremely precarious" and dangerous, and we cannot say that those factual findings were clearly erroneous given the evidence in the record. We disagree with Bernardo's argument that the district court erred because (among other reasons) it did not consider that the strap holding up the alien had a seatbelt-type lever that would have allowed the alien to release herself without using a knife, the dashboard area was large without sharp metal or jagged edges, and the compartment was not airtight. While these observations indicate that the dashboard compartment did not raise certain specific dangers (such as the risk of being suffocated or cut), it does not undermine any of the district court's findings regarding the risks of transporting a person in the dashboard of a vehicle. *See United States v. Cuyler*, 298 F.3d 387, 390 (5th Cir. 2002).

We next turn to whether this conduct met the criteria of Application Note 5, which indicates that § 2L1.1(b)(6) applies to a "wide variety of conduct," including but not limited to the listed examples. Accordingly, we consider whether the offense conduct at issue is analogous to the type of reckless conduct listed in Note 5. Based on the evidence in this case, it is reasonable to conclude that stashing a person in a dashboard compartment is analogous to "transporting persons in the trunk or engine compartment of a motor vehicle." U.S.S.G. § 2L1.1 cmt. n.5. The dashboard of a vehicle, like a trunk or engine compartment, is not meant to

hold a human body. A person strapped inside a dashboard, like a person in a locked trunk or engine compartment, cannot easily escape from the enclosure to enter the passenger compartment of the vehicle. By contrast, a person hidden under a hatchback or in a compartment behind the back seat remains within the portion of a vehicle intended for passengers and can readily escape from the lightweight cover used for concealment. *See Dixon*, 201 F.3d at 1233; *compare Cuyler*, 298 F.3d at 390 (applying § 2L1.1(b)(6) where the defendant transported four illegal aliens in the bed of his pickup truck), *with United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005) (reversing the district court's application of § 2L1.1(b)(6) where the defendant transported aliens in the cargo area of a minivan, which was inside the passenger compartment of the vehicle). In addition, the district court's findings that placing a person in a dashboard compartment is "extremely precarious" and unsafe supports the conclusion that the conduct amounts to "harboring persons" in a "dangerous, or inhumane condition," as stated in Note 5.

Bernardo argues that the district court erred in applying an enhancement under § 2L1.1(b)(6) because even if the district court correctly found that the offense conduct met the criteria in Note 5, *Torres-Flores* requires the district court to make the independent finding that the conduct "either exacerbates the likelihood of an accident, subjects the passenger to a risk of injury even during an accident-free ride, or both." 502 F.3d at 890. We disagree. *Torres-Flores* did not formulate a new requirement for applying § 2L1.1(b)(6) that supersedes or contradicts the Guidelines notes; rather, it explained that the conduct listed in the Guidelines notes shows the sorts of risks that meet the § 2L1.1(b)(6) requirement. *Id.* at 890 (noting that "we accord 'considerable

weight' to the Guidelines' application notes" and that these notes identify risks that "substantially increase a concealed passenger's chances of injury or death over and above the normal danger of vehicular travel"). As we explained in *Torres-Flores*, the conduct at issue in that case, transporting an alien covered by carpeting behind the back seat of an extended-cab pickup truck, did not give rise to those sorts of risks. By contrast, the offense conduct at issue in this case gave rise to a substantially increased risk of injury or death above the baseline risk of vehicular travel, as indicated by the examples in Note 5.

Because the offense conduct here meets the criteria of Note 5, we conclude that the district court did not err in determining that the conduct created a substantial risk of death or serious harm and therefore did not err in applying the six-level enhancement to Bernardo's base offense level.

**AFFIRMED.**