**NOT FOR PUBLICATION**

FILED

APR 19 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10556 |
| Plaintiff-Appellee, | D.C. No. 4:17-cr-00670-RCC-JR-1 |
| v. | |
| CESAR RENE RIVERA, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Submitted April 16, 2019[**]
San Francisco, California

Before: D.W. NELSON, FERNANDEZ, and BEA, Circuit Judges.

Defendant Cesar Rivera appeals his sentence and conviction. He argues that

the district court misapplied a sentencing enhancement, United States Sentencing

Guidelines (U.S.S.G.) § 2L1.1(b)(6), which provides a six-level enhancement for

recklessly creating a substantial risk of death or bodily harm to another. Rivera

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

also appeals the district court's acceptance of his guilty plea. The magistrate judge, he argues, committed plain error, under Federal Rule of Criminal Procedure 11, during his change of plea hearing by not advising him of his right to counsel, appointed if necessary, at all stages of his legal proceedings. But for this error, Rivera argues, he would not have pleaded guilty. We affirm.

Border Patrol agents, on March 27, 2017, arrested Rivera for transporting an undocumented alien, Luis Flores Baltazar-Pacheco, in the District of Arizona. The agents found Baltazar-Pacheco inside Rivera's car trunk. Baltazar-Pacheco, when questioned by the agents, said he was afraid of being in the trunk and did not know he could get out of the trunk by using an emergency lever or otherwise.

The government charged Rivera, in a two-count superseding indictment, with conspiracy to transport an illegal alien[1] and transportation of an illegal alien for profit.[2] Rivera pleaded to both counts without a plea agreement. During the change of plea hearing, the magistrate judge elicited a factual basis to support Rivera's plea and issued a recommendation that the district judge accept Rivera's guilty plea. The magistrate judge did not advise Rivera of his right to appointed counsel at every stage of the proceeding, including at trial. Rivera did not object, however, to the recommendation and the district judge accepted the plea.

---

[1] 8 U.S.C. § 1324(a)(1)(A)(v)(I), 8 U.S.C. § 1324(a)(1)(A)(ii), and 8 U.S.C. 1324(a)(1)(B)(i).
[2] 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(B)(i).

In the Presentence Report (PSR), the Probation Office calculated, and the district court applied, an adjusted offense level of eighteen, which included a six-level enhancement under U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person. The district court sentenced Rivera to twenty-one months in custody and a three-year term of supervised release. Rivera timely appealed.

We review the district court's factual findings for clear error and its interpretation of the United States Sentencing Guidelines de novo. *United States v. Smith*, 719 F.3d 1120, 1123 (9th Cir. 2013). We review guideline application decisions for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1168 (9th Cir. 2017). Because Rivera raised no objections in the district court for not complying with Federal Rule of Criminal Procedure 11, we review for plain error. *United States v. Adams*, 432 F.3d 1092, 1093–94 (9th Cir. 2006).

Application note 3 to U.S.S.G. § 2L1.1(b)(6) specifically lists as an example "transporting persons in the trunk or engine compartment of a motor vehicle" as conduct to which the enhancement applies. Commentary in the U.S.S.G. manual, like note 3 to § 2L1.1(b)(6), explains that a guideline "is authoritative unless it is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Martin*, 796 F.3d 1101, 1108 (9th Cir.2015) (quoting *Stinson v. Unites States*, 508 U.S. 36, 38 (1993)). Here, the application note's explanation of U.S.S.G. §

3

2L1.1(b)(6) is not inconsistent with a plain reading of the section. *United States v. Bernardo*, 818 F.3d 983, 986 (9th Cir. 2016). Rivera does not dispute the application note's authoritativeness; rather, Rivera argues that the note's car trunk example is not relevant to the specific facts of his case. Trunk emergency release levers, Rivera argues, were not common when the application note was written in 1997.

Our precedents do not analogize to U.S.S.G. application notes' examples mechanically. *See United States v. Torres-Flores*, 502 F.3d 885, 890 (9th Cir. 2007) (declining to apply U.S.S.G. § 2L1.1(b)(6) to an extended-cab pickup truck); *United States v. Dixon*, 201 F.3d 1223, 1233 (9th Cir. 2000) (declining to apply U.S.S.G. § 2L1.1(b)(6) to a hatchback car). In both *Torres-Flores* and *Dixon*, we looked at whether the specific means of transport in those cases increased the likelihood of an accident, a chance of injury without an accident, or both "over and above the normal danger of vehicular travel." *United States v. Fine*, 975 F.2d 596, 599 n.4 (9th Cir. 1992) (en banc).

The addition of trunk emergency release levers, Rivera argues, allow for safe and easy egress from locked trunks decreasing "the likelihood of an accident or the chance of injury without an accident." *Torres-Flores*, 502 F.3d at 890. Rivera goes on to argue that on the day the undocumented alien was in his trunk the weather was nice and fatal accidents in Arizona were just as common regardless of whether

a passenger was wearing a seatbelt. These facts, Rivera argues, means transporting the alien in his trunk did not increase the likelihood of the alien being injured with or without an accident and § 2L1.1(b)(6) is therefore inapplicable. The natural extension and logical conclusion of Rivera's arguments is that application note 3 to § 2L1.1(b)(6) is no longer valid. In other words, because car trunks now have release levers, it is no longer dangerous to transport people in them. These arguments are not persuasive.

First, while Rivera cites *Torres-Flores* and *Dixon* to bolster his argument, neither case involved car trunk transport. In those cases, our Court analogized pick-up truck and hatchback transport to car trunk transport, which is the example in § 2L1.1(b)(6)'s application note 3 and the factual circumstances in this case. Rivera assumes, moreover, that *Torres-Flores* created a new requirement that a district court must specifically find through independent fact-finding that the applicable conduct "either exacerbates the likelihood of an accident, subjects the passenger to a risk of injury even during an accident-free ride, or both." *Bernardo* makes clear this assumption is incorrect. 818 F.3d at 987–88 ("*Torres-Flores* did not formulate a new requirement for applying § 2L1.1(b)(6) that supersedes or contradicts the Guidelines notes; rather, it explained that the conduct listed in the Guidelines notes shows the sorts of risks that meet the § 2L1.1(b)(6) requirement.").

Second, we are bound by our reasoning in *Bernardo* which held that transporting a person in a car dashboard created a substantial risk of death or serious harm even if the person was strapped inside. In arriving our holding in *Bernardo*, we analogized to the authoritative application note's example of transporting a person in a car trunk—this case's exact factual scenario. *Bernardo*, 818 F.3d at 987 ("[I]t is reasonable to conclude that stashing a person in a dashboard compartment is analogous to 'transporting persons in the trunk or engine compartment of a motor vehicle.' The dashboard of a vehicle, like a trunk or engine compartment, is not meant to hold a human body. A person strapped inside a dashboard, like a person in a locked trunk or engine compartment, cannot easily escape from the enclosure to enter the passenger compartment of the vehicle." (internal citations omitted)).

Third, Rivera's argument that § 2L1.1(b)(6) does not apply to his conduct because he told the alien there was a release lever is unpersuasive. Notwithstanding that the district court did not find Rivera's testimony at the sentencing hearing credible on this point, Rivera provides no case law to support his contention that telling the alien about the release lever would make § 2L1.1(b)(6) inapplicable. The application note and case law tell us that transporting a human being in a car trunk is dangerous regardless of whether the trunk had a release lever or whether the person in the trunk knew about the release lever. The Sentencing Guidelines,

moreover, are regularly amended. If the Sentencing Commission believed that the advent of trunk release levers made car trunk transport less dangerous, the Commission could have amended that application note. It has not. We, therefore, affirm the district court's sentence.

Federal Rule of Criminal Procedure 11(b) requires the district court, during a change of plea hearing, to advise a defendant of certain rights, including the right to appointed counsel at all stages of the defendant's criminal proceedings. Fed. R. Crim. P. 11(b)(1)(D). Here, the magistrate judge who presided over Rivera's change of plea hearing did not make this advisal. The government does not dispute that this was plain error. To overturn his conviction, however, the government argues, the defendant has the burden of establishing "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). This is a high burden for the defendant and the United States Supreme Court intended it that way reasoning that:

> First, the standard should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error. . . . Second, it should respect the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court, and are indispensable in the operation of the modern criminal justice system. . . . And, in this case, these reasons are complemented by the fact, worth repeating, that the violation claimed was of Rule 11, not of due process.

*Id.* at 82–83 (internal citations omitted).

Here, Rivera has not shown that there is a reasonable probability, but for the

error—failure to recite Rule 11(b)(1)(D)—he would not have pleaded guilty. First, in this case and during the change of plea hearing, appointed counsel represented Rivera. Second, while the magistrate judge did not explicitly say "you have the right to an appointed attorney during trial," she did explain to Rivera the role of his appointed attorney during trial, including selecting a jury. Rivera, therefore, cannot claim he was unaware that he would have counsel at trial. Third, during the admit-deny hearing for a violation of his pretrial release conditions, which took place at the same time as the change of plea hearing, the magistrate judge advised Rivera of his right to appointed counsel. Fourth, this was not Rivera's first interaction with the criminal justice system. He had been convicted three times previously and he was represented by counsel in two of those cases and waived his right to counsel in the third case. And, fifth, Rivera has a master's degree and attended a couple of years of law school.

These facts indicate that Rivera knowingly and voluntarily pleaded guilty and would have done so even if the magistrate judge had recited Rule 11(b)(1)(D). We, therefore, affirm Rivera's conviction.

**AFFIRMED.**