Opinion by Judge B. FLETCHER; Dissent by Judge M. SMITH.
OPINION
B. FLETCHER, Circuit Judge:
A jury convicted Richard A. Bailey of two counts of securities fraud. Bailey appeals his conviction arguing that he was prejudiced by the trial court’s improper admission of a prior civil complaint filed by the SEC against Bailey. We agree and vacate Bailey’s conviction and remand for a new trial.
I. BACKGROUND
Bailey was the President, Chief Executive Officer, and Chairman of the Board of Directors of Gateway, a small, public company involved in selling health and dietary supplements.[1] In 2002, Bailey met Richard Owens, another businessman, and the two began doing business together. The nature and legitimacy of some of their business deals was the critical issue at trial.
According to the prosecution, Bailey did not comply with the Securities and Exchange Commission’s rules on stock issuances. The SEC requires public companies to disclose voluminous information before issuing stock (e.g. details regarding past performance; information about executives; intended use of the sale proceeds). This process can be time-consuming and expensive. Without these disclosures, the SEC allows public companies to issue stock to employees, consultants, or advisors who provide bona fide services to the company. The issuance cannot be used merely to raise capital for the company and must be in exchange for legitimate services.
In 2003, the SEC filed a civil complaint against Bailey and his company for violating Rule S-8, the rule that requires the distribution of stock to be in exchange for bona fide services. Bailey settled the lawsuit with no admission of liability.
In 2004, Bailey was criminally charged for issuing stock to Owens in order to raise capital for Gateway and for Bailey and the company’s personal benefit, both of which are proscribed by Rule S-8. Bailey pled not guilty and proceeded to trial. His current appeal is from the jury conviction.
Prior to trial, the prosecution filed a motion in limine seeking permission to introduce the fact that the SEC filed a civil complaint against Bailey in 2003. The prosecution argued that the 2003 complaint would show that Bailey knew that his conduct in 2004 was unlawful. The prosecution also argued that the prior complaint would establish that Bailey knew that he was required to comply with Rule S-8. The district court permitted the prosecutor to “introduce just the fact of the SEC complaint” but warned not to get “any deeper into it.”
At trial, the prosecution presented witnesses who testified about the business dealings between Bailey and Owens. FBI Agent Scott Schofield provided extensive testimony about the numerous transactions *797 between Gateway and Owens between April and June 2004, the time frame of the indictment. Specifically, Schofield testified that Owens received a total of $661,000 in S-8 stock in April and May of 2004 but that no documentation existed detailing the exchange of services for stock. Schofield testified that he believed that the lack of a written agreement and invoices between Owens and Gateway suggested that the arrangement was merely a ruse for unlawful activity. He admitted that there was a written agreement for the years 2002-03, but testified that no such agreement existed for 2004, the time frame at issue in this criminal case. On cross-examination, Schofield appeared to admit that verbal agreements would likely be sufficient for S-8 purposes and that written documentation was not necessary to comply with Rule S-8.[2]
Margaret Nelson, an attorney with the SEC’s division of enforcement, testified that she deposed Bailey in 2006 and asked him about the S-8 issuances to Owens. Nelson read into evidence portions of Bailey’s deposition where he testified that no time sheets or invoices existed that reflected the work Owens performed, Gateway’s accounting documents showed that Owens received $505,000 in stock, and Bailey did not believe Owens performed that amount in services. Nelson also testified that in 2003, the SEC filed a civil enforcement action against Bailey, Gateway, and others, alleging that they violated SEC rules by using S-8 to raise capital instead of exchanging stock for bona fide services.
The prosecution’s star witness was Owens. Owens testified that in the spring of 2004, Bailey and Ternes asked him to accompany them on a trip to Utah to look at some real estate. One of the properties they viewed was Aspen Cove, a hunting and fishing lodge. Owens testified that Bailey and Ternes were interested in purchasing the property and began negotiating terms. Owens testified that Bailey and Ternes wanted to make a down payment between $400,000 and $600,000, and in order to come up with the funds, they planned to issue Owens S-8 stock, which he would trade through his brokerage account and send them back the proceeds to use for the down paymént. In exchange, Owens would receive the difference between the proceeds from the sale of the stock and the down payment and also be able to use the lodge at his pleasure. Owens testified that they had engaged in this type of transaction “several times prior” and that he knew at the time that the proposal was not legitimate. When asked why Owens went along with the plan knowing that it was not legitimate, he said that “[g]reed overtook the need” and that he viewed the transaction as “helpfing] a brother out.”
Owens testified that there was a written consulting agreement delineating the terms of the agreement, but that it was entered into “after the fact, after [the SEC] investigation started” and that the document was “[a]ll just smoke and mirrors.” Owens testified that he “may have signed a consulting agreement or papers that stated that [he was] a consultant for Gateway” but that those documents were not at all “real or legitimate.”
Owens testified that he did the same type of deal with Bailey and Ternes using S-8 stock for another parcel (the “Pepper Lane” building).
On cross-examination, defense counsel attacked Owens’s credibility. Owens ad *798 mitted that he had been charged with federal crimes relating to the improper issuance of S-8 stock and was facing thirteen years in prison. He admitted that his sentencing date had been continued several times so that he could testify at Bailey’s trial, and that he was cooperating with the prosecutor in the hopes of receiving a lower sentence. Owens admitted that he had perjured himself on his tax return, raising doubts about whether he was telling the truth since he had lied before. Defense counsel also impeached Owens’s credibility by eliciting evidence of an assault on his ex-wife, his excessive use of drugs and alcohol, and the circumstances leading to the decline of his relationship with Bailey.[3]
Bailey did not testify. His defense was that he did nothing illegal because the S-8 stock issuances were for legitimate consulting services. Bailey’s daughter testified that through Owens’s business contacts, she and other Gateway employees flew to New York to meet with executives at the Home Shopping Network and the corporate office of Nathan’s Hot Dogs about potential business endeavors.
Defense counsel argued that Bailey issued the stock to Owens in exchange for bona fide sendees. First, Owens provided connections to important business people — connections that were supposed to allow Bailey to grow his business. Second, Owens helped locate and negotiate the Aspen, Cove deal, and was ultimately able to secure an additional 36 acres of land for the original asking price. Bailey’s counsel argued that simply because Bailey may not have ultimately received the full value of the stock issuance does not mean that when he entered into the transaction, he did so with an unlawful purpose. And of course, defense counsel argued that Owens was a crook, that he had lied before and was lying now to obtain leniency in his sentencing.
The prosecutor’s closing tracked each of the four elements of the crime.[4] He repeatedly argued that willfulness was the most important element the government had to prove. In order to prove that willfulness was satisfied, the prosecutor highlighted the prior SEC complaint, and argued that Bailey had broken the law before and then done it again.
After deliberating for one day, the jury returned a guilty verdict against Bailey and Ternes. Bailey was sentenced to 30 months’ imprisonment.
II. DISCUSSION
The issue on appeal is whether the trial court erred by allowing evidence of the prior civil complaint filed by the SEC in 2003 which named Bailey and his company for improper use of Rule S-8.
(A) Standard of Review
Whether the district court erred in permitting the government to introduce the prior civil complaint because it did not *799 satisfy Rule 404(b)’s admissibility requirements is reviewed for abuse of discretion. United States v. Romero, 282 F.3d 683, 688 (9th Cir.2002).
(B) Rule 404(b)
[1] Applicable Legal Standards
Bailey argues that the prior civil complaint amounted to impermissible “other act evidence” barred by Federal Rule of Evidence 404. “Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion.” Romero, 282 F.3d at 688 (citing Fed. R. Evid. 404(a)); see also United States v. Derington, 229 F.3d 1243, 1247 (9th Cir.2000). “However, Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Romero, 282 F.3d at 688. The government argues that the evidence was used to show proof of intent and knowledge.
In the Ninth Circuit, a four-part test is used to determine the admissibility of evidence pursuant to Rule 404(b):
Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.
Romero, 282 F.3d at 688 (citation omitted). The government “has the burden of proving that the evidence meets all of the above requirements.” United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). “If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.” Romero, 282 F.3d at 688 (citation omitted).[5]
(2) Analysis
Bailey primarily challenges the admissibility of the complaint under the third prong of the FRE 404(b) test: the evidence must be “sufficient to support a finding that defendant committed the other act.” Romero, 282 F.3d at 688. In Huddleston, the Supreme Court clarified that the government need not prove Rule 404(b) evidence by a preponderance of the evidence; rather, “such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.” 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); see also Verduzco, 373 F.3d at 1027.
We conclude this standard was not met in Bailey’s case. In order for the government to introduce the prior SEC complaint, there must have been sufficient evidence from which the jury could reasonably conclude that Bailey actually committed the allegedly-similar bad acts. See Huddleston, 485 U.S. at 685, 108 S.Ct. 1496. The only evidence offered to meet this standard was the complaint itself.
As an initial matter, none of the facts alleged in the complaint were admitted to by Bailey or proven. In fact, Bailey settled the civil action with no admission of liability. The out-of-circuit cases are clear that where a defendant admits nothing, the evidence of the prior conduct is inadmissible. In United States v. Cook, 557 *800 F.2d 1149 (5th Cir.1977), defendants were charged for their participation in selling oil and gas drilling ventures that violated SEC Rules. Id. at 1150-1151. A year before, the SEC had filed a civil enforcement action against defendants alleging violations of the same rules. Id. at 1151. The district court admitted evidence of injunction documents resulting from a settlement in the prior civil case. The Fifth Circuit reversed finding that because the defendant neither admitted nor denied the fraud alleged in the injunction, offering the documents themselves would cause the jury “to infer that prior wrongful acts had been committed, an' inference impermissible.” Id,, at 1153. In the case of In re Adler, Coleman Clearing Corp., the defendants were charged with fraud. 1998 WL 160036, at *4 (Bkrtcy.S.D.N.Y.1998). The government sought to introduce evidence of an SEC Administrative Release which stated that members of the defendant-broker company had previously violated federal. securities laws for the purpose of showing knowledge and intent to commit fraudulent securities transactions. Id. at *4, *8. The court refused to admit the evidence because the affected defendants accepted an offer of settlement but “neither admitted nor denied the findings made therein,” and thus could not be used to show that the defendants “actually engaged in the conduct alleged.” Id. at *8.[6]
We agree -with the reasoning of these cases.[7] A defendant may settle a case for a variety of reasons. He may have committed the conduct alleged in the complaint or he may not have — but having settled the claim, there is no way to know. Admitting prior conduct charged but settled with no admission of liability is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question. There is no logical relevancy to admitting this type of evidence.[8]
*801 A second and more basic reason leads us to conclude the disputed evidence was improperly admitted. We risk stating the obvious here: a complaint is merely an accusation of conduct and- not, of course, proof that the conduct alleged occurred. The prosecution did not introduce evidence that Bailey misused the SEC rules — rather, the prosecution offered only the complaint, which is far from evidence of anything. Admitting the complaint may have permitted the jurors to succumb to .the simplistic reasoning that if the defendant was accused of the conduct, it probably or actually occurred. Such inferences .are impermissible.
The government barely addresses this issue but instead leans heavily on the purpose for which the evidence was offered, ie., “to prove that defendant acted intentionally, knowing that his actions were wrong.” There is some logic to the argument that evidence that Bailey had previously been accused of violating Rule S-8 shows that he was on notice of the type of prohibited conduct. But this is not enough. The prosecution was still required to prove that, the evidence was sufficient to support a finding that Bailey committed the act charged in the complaint. This a mere complaint cannot do.
The government argues that courts routinely admit evidence of mere accusations, ie., prior arrests. We agree that courts permit evidence of prior'arrests, but such evidence must still satisfy- the four-part test for admissibility. In the cases we have found where evidence of a prior arrest is admitted, a person with knowledge of the crime testifies to the circumstances of the prior offense. See United States v. Basinger, 60 F.3d 1400, 1408 (9th Cir.1995) (arresting officer’s testimony is sufficient to establish that the prior act occurred); United States v. Hinton, 31 F.3d 817, 823 (9th Cir.1994) (uncorroborated testimony by victim is sufficient evidence that the prior act occurred).
; Where a prior arrest is insufficient to prove commission of the offense, it does not satisfy the third prong of the test, and therefore should not be admitted. In United States v. Marshall, the defendants were convicted on multiple drug charges. 173 F.3d 1312, 1313 (11th Cir.1999). A search of their homes revealed a factory equipped to produce cocaine, but no actual cocaine. Id. at 1314. The' government sought to introduce evidence that the defendants were previously arrested based on their presence in a house where cocaine paraphernalia was present. The police investigation revealed no evidence linking the' defendants to cocaine production, so the charges were dismissed. The Eleventh Circuit reversed the district court’s decision to admit the evidence of. the prior arrest stating:
... [Tjhere was nothing in the evidence presented that tended to prove intent to distribute. In order for the evidence to be probative of intent, the-jury would have to believe that [defendants] previously committed the offense of possession with intent to distribute (or conspiracy to do the same). The evidence of the arrest was insufficient to prove commission of the offense; other evidence had to be presented from which the jury reasonably could conclude that the offense was committed ... Consequently, the jury could not have reasonably concluded — based on the evidence before it — that [defendants] had been involved in crack distribution, and therefore the prior arrest and the circumstances surrounding it were not probative of intent.
Id. at 1317.
In Bruce v. City of Chicago, the defendant-City did not even object to the civil rights plaintiffs request that evidence of his prior arrests that did not lead to a *802 conviction be excluded. No. 09 C 4837, 2011 WL 3471074, at *9 (N.D.Ill. July 29, 2011). In United States v. Donnell, the defendant objected to the admission of evidence of his prior arrests for which he was neither charged nor convicted, but the court declined to address the issue, instead concluding that any error was harmless. 596 F.3d 913, 922 (8th Cir.2010).
The dissent attempts to recast the government’s use of the complaint as being “narrowly offered for the purpose of proving that Bailey knew it was illegal to issue unregistered stock without receiving bona fide services in return.” This characterization of how the government used the evidence is simply not so — the government used the complaint to prove intent. Even the government concedes this point. At the ruling on the motion in limine, the prosecutor stated “I think the fact of the complaint in 2003 is relevant to establishing their intent in 2004.” And in the government’s response brief, it states “[i]n order to prove that defendant acted intentionally, knowing that his actions were wrong, the government relied on evidence that the SEC had sued defendant in 2003 for essentially identical conduct.” Indeed, the prosecutor admitted intent was the crucial element in the case and highlighted the complaint to show the element satisfied. The prosecutor said, referring to the complaint, that the SEC had told Bailey “don’t break the law anymore” and “stop, don’t do this again.” The clear implication of the statement “don’t break the law anymore” is: he broke the law before. Similarly, the unmistakable implication of “stop, don’t do this again” is: he did this before. Those statements by the prosecutor were not merely meant to prove that Bailey had knowledge of Rule S-8’s prohibitions. Rather, the statements go directly to the only element at issue in the case: Bailey’s intent to violate Rule S-8 based on his alleged previous conduct, of which he had been accused but never admitted.
It must be said, though, that a complaint would not establish knowledge even if the prosecution had purported to use it only for that reason. All a complaint establishes is knowledge of what a plaintiff claims. It does not establish the truth of either the facts asserted in the complaint, or of the law asserted in the complaint. Since the previous complaint was never proved, nor was the truth of any of it conceded, it could not have established knowledge of the law. A complaint may state that cars driving southbound are required to stop at the intersection of 1st and Main, and that the defendant did not stop. But such a complaint establishes neither that southbound vehicles have a duty to stop, nor that the defendant failed to stop. Likewise, thet SEC complaint establishes neither knowledge of the law nor a past wrongful act.
We hold that a mere accusation of prior conduct is insufficient to support a finding that the prior act was committed and, therefore, does not tend to prove that the defendant committed the act for which he is on trial. In order for evidence of a prior accusation to be admissible, there must be sufficient, independent evidence (besides the accusation alone) to support a finding that the prior conduct occurred. No such evidence was introduced here[9] and, therefore, the complaint should not have been admitted.
(C) Harmlessness
 Having concluded that the complaint was improperly admitted, we consid *803 er whether the error was harmless. Where, as here, the district court’s error is of a noneonstitutional magnitude, “[w]e must reverse unless there is a ‘fair assurance’ of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict.” United States v. Morales, 108 F.3d 1031, 1040 (9th Cir.1997) (en banc) (quoting United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir.1996)). The burden to show the harmlessness of the error is on the party benefitting from the error, Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir.2005), in this case, the government. United States v. Gonzalez-Flores, 418 F.3d 1093, 1099 (9th Cir.2005). Therefore, our review begins with “a presumption of prejudice.” Obrey, 400 F.3d at 701.
The prosecution’s case turned almost exclusively on the testimony of one witness, Owens, who was trading his testimony in the hopes of a lesser sentence. Although FBI Agent Schofield’s testimony about the number of transactions and money exchanged between Owens and Bailey in April through June 2004 provided some independent, unbiased corroboration of the prosecution’s theory, Schofield admitted that he did not know for certain whether Bailey’s stock issuances to Owens were made in exchange for bona fide services. Instead, Schofield simply believed that the lack of a written agreement and invoices between Owens and Gateway suggested that the arrangement was a sham.
Schofield, however, acknowledged that there was a written agreement for the years 2002-03. By 2004, Bailey and Owens had been involved in various business dealings and it is entirely plausible that the April through June stock issuances were for Owens’s business services, but there was simply no written agreement that memorialized the arrangement. Indeed, Schofield appeared to admit that verbal agreements to exchange services for stock would not likely violate Rule S-8, provided, of course, the agreement was legitimate.
Bailey’s deposition testimony proffers a plausible, lawful explanation for the transactions.[10] He asserted that the S-8 shares issued to Gateway consultants were generally commensurate with the services they rendered. When asked what type of services Owens provided to Gateway, Bailey responded that Owens “had a lot of connections” and “[sjeemed to know what he was doing in marketing.” Because Gateway’s success depended on marketing its products, paying Owens for his connections to people in the marketing industry would allow Gateway to grow its business and thus issuing stock for such services is entirely legitimate. For example, Bailey testified that Owens helped Gateway launch a new product, the Pete Rose grill, just before Pete Rose was to be inducted into the baseball Hall of Fame. Specifically, Owens worked directly with Pete Rose and others to manufacture and market the product. When asked whether Owens performed services commensurate with the shares he received for his work on the Pete Rose grill, Bailey justified the issuance of shares as follows: if Pete Rose had been inducted into the Hall of Fame, the shares issued to Owens would no doubt be considered fair. Of course, a retrospective view of the stock issuances to Owens made them appear suspect because the project was eventually a bust. That the project was a bust does not mean that Gateway’s stock issuance to Owens was a sham, it merely means that the business risk Gateway took on Owens’s *804 ability to turn a profit on the project failed.
Bailey also testified that Owens provided bona fide services on the Aspen Cove and Pepper Lane deals. Specifically, Bailey said that Owens “suggested the purchase of [Aspen Cove] and helped negotiate the purchase.” This testimony was corroborated by John Boschetto, the seller of the Aspen Cove property, who testified that Owens was one of the people interested in the property, and helped negotiate the deal.
In short, there was ample evidence to corroborate Bailey’s defense that the stock issuances to Owens were compensation for services rendered.
The damaging testimony came from Owens himself. Owens admitted that he “might have” signed a consulting agreement but insisted that those agreements were not legitimate, but were “just smoke and mirrors.” With respect to the Aspen Cove deal, Owens testified that they discussed how the deal would transpire: Gateway would issue Owens S-8 stock, Owens would trade the stock through his brokerage account, keep some of the proceeds himself and wire the remaining balance to whatever entity Bailey designated. Owens knew at the time that the transaction was not legitimate and just viewed it as trying to help Bailey. Owens testified that they had engaged in this type of transaction several times before. Owens testified that he expected to have no part of the Aspen Cove deal other than to be permitted to stay at the lodge for free whenever he desired. Owens testified that in order to purchase the Pepper Lane property, he and Bailey engaged in the same type of transaction.
Clearly, the jury had to believe either an admitted crook hoping for leniency (Owens: This was all a sham and everyone knew it) or an accused crook (Bailey: I was issuing stock to Owens for his real services) and his surrogates.
We do not suggest that a jury could never find a defendant guilty based on the testimony of a cooperating witness who is trading testimony in the hopes of a lesser sentence. But when the government’s case is built around a single witness with questionable motives, it can hardly be said that the government’s case was strong. In most cases where courts have found harmless error despite the erroneous admission of evidence, the properly admitted evidence was highly persuasive and overwhelmingly pointed to guilt. See United States v. Rendon-Duarte, 490 F.3d 1142, 1145 (9th Cir.2007) (evidentiary error harmless in light of police officer’s testimony and physical evidence of the crime); United States v. Rowe, 92 F.3d 928 (9th Cir.1996) (assuming, arguendo, that district court committed evidentiary error, such error was harmless in light of other evidence including defendant’s confession and weapon found in his possession); United States v. Yazzie, 59 F.3d 807 (9th Cir.1995) (district court’s evidentiary error harmless because of abundant, independent evidence including the victim’s detailed statements implicating the defendant); United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1047 (9th Cir.1990) (finding evidentiary error was harmless where defendant made incriminating statements that were properly admitted). Here, there was no confession by Bailey, no audiotape or videotape of Bailey discussing the misuse of Rule S-8, no emails or other documentary evidence, and no direct evidence from unbiased witnesses. There simply was no substantial evidence of Bailey’s guilt other than Owens’s say so. We conclude that the testimony of just one witness who has a great deal of incentive to lie cannot alone con- *805 statute overwhelming evidence of Bailey’s guilt.
We must therefore evaluate the potential impact of the improperly admitted evidence keeping in mind that the government’s case against Bailey was weak. The prosecutor made numerous references to the prior complaint during his closing argument, and as this court has recognized, “closing argument matters ... a great deal.” United States v. Kojayan, 8 F.3d 1315, 1323 (9th Cir.1993).
The prosecutor recognized that Bailey’s intent to commit the crime was the sole issue in the case. He stated that there was “an extraordinary amount of evidence to show that [Bailey] acted willfully.” He then highlighted the prior complaint. Bailey had been told, argued the prosecutor: “don’t break the law anymore.... Pay us for your deliberate violations of the law.” The prosecutor emphasized the temporal proximity between the prior SEC complaint and the conduct at issue in this litigation when he said: “... the fact that [the SEC had sued Gateway] a year before all this nonsense with Owens, that is crucial. That is important because when the SEC filed this lawsuit, they were just telling them straight out, stop, don’t do this again. They blew through this stop sign just as sure as if they were driving down the street.” At this point, the prosecutor displayed a red stop sign which served as a graphic depiction of Bailey’s alleged abuse of Rule S-8, and likely seared in the jury members’ minds the warning given Bailey by the SEC. Indeed, the government’s references to the SEC Complaint, both orally and visually, went to the heart of the case.
Beginning, as we must, with a “presumption of prejudice,” we conclude that the introduction of the prior SEC complaint was not harmless. The record reveals this was a close case. There was considerable evidence supporting Bailey’s defense. The government’s case turned entirely on Owens’s testimony; he had obvious credibility issues. Improperly admitted evidence, intended to show that Bailey had broken the law before and knew it, could have tipped the jury in the government’s favor.
III. CONCLUSION
The trial court erred by admitting the prior civil complaint. That evidentiary error was not harmless. We therefore vacate Bailey’s conviction and remand for a new trial.
REVERSED and REMANDED for a new trial.

. Gateway’s Chief Operating Officer, Florian R. Ternes was tried together with Bailey and also convicted. Ternes does not participate in Bailey’s evidentiary challenge on appeal.

. A review of Nelson’s testimony indicates that she too was skeptical about the transactions in large part because Bailey could not provide invoices or agreements delineating the consulting arrangement between Bailey and Owens.

. Bailey’s relationship with Owens allegedly , soured after he made a pass at Bailey’s , daughter, and after learning that Bailey wanted to use the Aspen Cove lodge for Mormon religious activities.

. The elements of the crime are:
First, the defendant directly or indirectly sold securities or offered to sell securities. Second, no registration statement was filed and in effect with the Securities and Exchange Commission as to such securities. Third, interstate transportation or communication of the mails were used in connection with the sale or offer of sale of the securities, and, fourth, defendant acted willfully. A person acts willfully under the federal securities laws by intentionally undertaking an act that one knows to be wrongful. Willfully does not require that the person know specifically that the conduct was unlawful.

. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Fed. R. Evid. 403.

.We find additional support for the notion that inconclusive allegations of prior similar behavior is not useful. In the civil rights context, courts are reluctant to admit evidence of prior excessive force complaints against a police officer if the complaints are unsubstantiated. For example, in Sibrian v. City of Los Angeles, 288 Fed.Appx. 385, (9th Cir.2008), an unpublished disposition, the panel upheld the district court's decision to exclude evidence of prior complaints involving the defendant police officer stating that the officer was exonerated on three of the prior incidents and that the evidence was inconclusive on the fourth incident. See also Hopkins v. Andaya, 29 F.3d 632, 1994 WL 396202, at *2 (9th Cir.1994) (unfounded citizen complaints were not relevant in Section 1983 action). Other circuits have reached the same conclusion. See United States v. Taylor, 417 F.3d 1176, 1179 (11th Cir.2005) (district court did not abuse discretion in denying plaintiff's request to offer unfounded citizen complaints to prove police officer’s bias and motive). Even where the defendant police officer had not been exonerated on a civilian complaint, the Second Circuit stated that "the relevance of a single unsubstantiated charge is obviously limited.” Berkovich v. Hicks, 922 F.2d 1018, 1023 (2d Cir.1991).

. The dissent states that our "discussion of settlement evidence is a red herring because whether Bailey accepted or denied responsibility in the settlement is not at issue in this case, and was not raised on appeal.” Dissent at 807. However, Bailey did raise this issue — his opening brief states that the complaint should not have been admitted because it was “unverified, never proven to a judge, never proven to a jury, and never admitted by Mr. Bailey” and because Bailey settled the case "with no admission of liability.” That Bailey never admitted responsibility is entirely relevant here because the government used the complaint to argue that Bailey had "broken the law before” when there was no such evidence.

. It is a well-established principle that in order to be properly admitted, other-acts evidence, like all evidence, must be relevant. See Fed.R.Evid. 401.

. Owens testified generally that he and Bailey had previously engaged in the type of transaction charged in the 2004 complaint, but he did not provide any specifics about that alleged conduct, much less discuss the specific acts charged in the 2003 complaint.

. Nelson, the SEC attorney who deposed Bailey, testified about portions of Bailey’s deposition testimony and the relevant pages were admitted as a trial exhibit.