**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 19 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   21-50057 |
| Plaintiff-Appellee, | D.C. No. 2:18-cr-00809-JFW-1 |
| v. | |
| ALI F. ELMEZAYEN, AKA Ali F. Elmeza Yen, AKA Ali Fathelelah Elmezayen, AKA Ali Fathellah Elmezayen, AKA Ali Sayed, AKA Ali Fathelehah Sayed, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted December 8, 2022
Pasadena, California

Before:  BEA, IKUTA, and CHRISTEN, Circuit Judges.

Defendant-Appellant Ali Elmezayen appeals the district court's judgment

entered upon a jury verdict that found him guilty of four counts of mail fraud under

18 U.S.C. § 1341, four counts of wire fraud under 18 U.S.C. § 1343, aggravated

identity theft under 18 U.S.C. § 1028A(a)(1), and four counts of money laundering

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

under 18 U.S.C. § 1957. The district court sentenced Elmezayen to 212 years in prison. Elmezayen raises five issues on appeal: he alleges that the district court erred (1) when it failed to conduct an adequate voir dire regarding prospective jurors' experiences with autism and domestic violence, (2) when it permitted Detective Cortez to provide impermissible opinion testimony concerning witness credibility, (3) when it excluded hearsay testimony Elmezayen intended to elicit from Dr. Bruno, (4) when it admitted testimony from Sarah Wickes, and (5) when it denied a motion to continue the trial so that Elmezayen could obtain the testimony of his proffered Egyptian witnesses who had been denied visas. Lastly, Elmezayen also contends that the cumulative effect of the errors warrants a reversal.

The parties are familiar with the facts of this case, so we do not recite them here. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm the conviction.

1. Elmezayen first contends that the juror voir dire did not adequately test the biases of the venirepersons because the district court should have informed the prospective jurors that Elmezayen's sons had autism and should have asked whether a claimed victim of domestic abuse, like Elmezayen's wife, should almost always be believed. We review a district court's voir dire for an abuse of discretion, and we will reverse a conviction only if the judge "fail[s] to ask questions reasonably sufficient to test jurors for bias or partiality." *United States v. Payne*, 944 F.2d 1458,

2

1474 (9th Cir. 1991). Given this latitude, additional questioning is usually unnecessary. But it may be required if the case's subject matter involves issues on which the public has "strong feelings" that may "skew deliberations." *United States v. Jones*, 722 F.2d 528, 530 (9th Cir. 1983) (per curiam). Elmezayen contends that autism and domestic violence are such topics. To date, this Court has expressly recognized the "strong feelings" exception only in matters involving child sexual abuse, narcotics, and the insanity defense. *United States v. Anekwu*, 695 F.3d 967, 980 (9th Cir. 2012); *United States v. Toomey*, 764 F.2d 678, 682 (9th Cir. 1985). The district court here first informed the venire of the accusations that Elmezayen had intentionally killed his sons and had attempted to kill his wife, Ms. Diab, and then expressly questioned the venirepersons about their experiences with both autism and domestic violence. Both lines of questioning elicited responses from venirepersons. Thus, because the district court "asked broader questions [to the venirepersons] which elicited the information sought by the defense," there is "nothing in the record indicat[ing] that the judge's failure to honor [Elmezayen]'s requests amounted to an abuse of discretion." *Payne*, 944 F.2d at 1474–75.

2. Elmezayen next argues that the district court should have excluded as improper opinion testimony Detective Cortez's statements that he was "looking for truth" and that he assessed whether a suspect was lying by assessing whether the suspect was being "evasive[]," "slouch[ing]," or "rambl[ing]." The district court

3

clearly erred in overruling Elmezayen's objection—whether we analyze Detective Cortez's testimony through the lens of expert opinion testimony or improper lay witness testimony concerning credibility. *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998) (holding that an officer's "testi[mony] that, *based on his training and experience*, [another] was telling the truth" constituted "opinion evidence regarding . . . credibility [that wa]s inadmissible" (emphasis added)). The failure to exclude opinion testimony is reviewed for an abuse of discretion, *see United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997), as is a district court's admission of lay testimony, *United States v. Ortiz*, 776 F.3d 1042, 1044 (9th Cir. 2015). On the one hand, the government admits that Detective Cortez was not qualified as an expert witness. And despite being a lay witness, Detective Cortez testified generally about "all of [his] interviews," and the patterns and observations he drew therefrom, to compare them to his interview with Elmezayen and to emphasize his belief that Elmezayen was likely lying. Such general opinion testimony that exceeds the scope of a witness's "personal experience" in relation to a case is the province of experts, not lay witnesses like Detective Cortez. *United States v. Preston*, 873 F.3d 829, 838 (9th Cir. 2017). On the other hand, Detective Cortez's recitation of his observations of Elmezayen's demeanor that Detective Cortez then implied evinced Elmezayen's lack of credibility impermissibly allowed Detective Cortez to substitute his opinion for that of the factfinder's. *United States*

4

*v. Awkard*, 597 F.2d 667, 670–71 (9th Cir. 1979). Viewed either way, Detective Cortez's testimony was clearly inadmissible. The district court erred in overruling a timely and proper objection.

However, this error was harmless. *See United States v. Lague*, 971 F.3d 1032, 1041 (9th Cir. 2020) ("Reversal is not required if there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." (internal quotation marks and citation omitted)). Where, as here, an "error is of a nonconstitutional magnitude," we reverse "unless it is more probable than not that the error did not materially affect the verdict." *United States v. Bailey*, 696 F.3d 794, 803 (9th Cir. 2012) (cleaned up). Stated another way, we will hold an error harmless if the "properly admitted evidence" elsewhere in the record constitutes "overwhelming evidence of [defendant's] guilt." *Lague*, 971 F.3d at 1041; *see also Bailey*, 696 F.3d at 804.

Although Detective Cortez's assertion that Elmezayen was lying about having life insurance coverage on his children was impermissible, there is other overwhelming admissible evidence of just that fact. In particular, a police report from the accident stated that Elmezayen "failed to tell the police the true number of insurance policies" he held, and the admitted evidence included eight *accidental death* policies, including their coverage amounts, which policies covered his children.

There is also substantial evidence in the record contradicting Elmezayen's description of the accident to Detective Cortez, such as eyewitness testimony that Elmezayen's car accelerated, traveled over 40 feet from the edge of the pier before hitting the water, and drove through the only unobstructed space on the crowded pier. In sum, because the "properly admitted evidence was highly persuasive and overwhelmingly pointed to guilt," any error in admitting Detective Cortez's testimony was harmless. *Bailey*, 696 F.3d at 804; *Lague*, 971 F.3d at 1041.

3. Elmezayen also argues that the district court erred in prohibiting Dr. Bruno from testifying that he had asked her to do all she could to save his son on the night of the accident. This court reviews evidentiary rulings for an abuse of discretion. *United States v. Hayat*, 710 F.3d 875, 893 (9th Cir. 2013). The district court erred in preventing Dr. Bruno from testifying about Elmezayen's request because it was admissible under the state of mind exception to hearsay. Fed. R. Evid. 803(3). Elmezayen's statement spoke to Elmezayen's state of mind in the hospital. The government put Elmezayen's state of mind in the hospital in issue by eliciting testimony from Dr. Bruno that Elmezayen's behavior was highly unusual for a father who was just told that his son was in a critical condition. *Cf. United States v. Hearst*, 563 F.2d 1331, 1341 (9th Cir. 1977) (per curiam). Thus, Elmezayen had the proper foundation for the admission of this statement under the state of mind hearsay exception because he satisfied contemporaneousness, lack of opportunity for

6

reflection, and relevance. *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

The error was harmless, however, because the jury heard Dr. Bruno testify to another statement that Elmezayen wanted Dr. Bruno to keep him updated on his son's condition. *See Lague*, 971 F.3d at 1041.[1]

4. Elmezayen next contends that the district court erred by admitting Sarah Wickes's testimony about indications that she considered to be the warning signs of insurance fraud, because it was impermissible criminal profile evidence. Even if the admission of Wickes's testimony was error, we conclude that such error was harmless because there is overwhelming evidence of Elmezayen's insurance fraud: all eight accidental death policies, which covered his sons and ex-wife, were admitted into evidence, Ms. Diab testified that Elmezayen had made a prior attempt on her life, the jury heard phone calls that Elmezayen made before the accident pretending to be Ms. Diab, which revealed his interest in the policies' contestability periods, and the government put on testimony showing that Elmezayen had laundered the insurance proceeds he received. *See Lague*, 971 F.3d at 1041.

---

[1] Elmezayen's rule of completeness argument is meritless: the rule of completeness does not apply here because the jury heard no excerpts of Dr. Bruno's testimony, which excerpts themselves were claimed to be misleading. *See United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014).

7

5. Finally, Elmezayen challenges the district court's denial of his oral motion to continue the trial so that he could obtain the testimony of four proffered Egyptian witnesses. The denial of a continuance is reviewed for an abuse of discretion and involves our assessing whether the denial was "arbitrary or unreasonable," which assessment depends on a defendant's "diligence," whether a continuance would meet his asserted "need," the delay's inconvenience, and the prejudice caused by the denial. *United States v. Flynt*, 756 F.2d 1352, 1358–59 (9th Cir. 1985). When a continuance is requested to obtain a witness's testimony, this Court assesses prejudice by reviewing the defendant's proffer, the testimony's relevance, and the likelihood that the testimony could be obtained in a timely fashion. *United States v. Sterling*, 742 F.2d 521, 527 (9th Cir. 1984).

The denial of a continuance here was not an abuse of the court's discretion. *Flynt*, 756 F.2d at 1359. Elmezayen was certainly not diligent: the witnesses were Elmezayen's family members, defense counsel was made aware of them nearly a year earlier when he began representing Elmezayen, Elmezayen had over three months to obtain visas from the date the trial was set, and Elmezayen requested the continuance a week after he knew that the visas were denied—in the middle of trial. The delay would have inconvenienced the court and the jury given the request was made *after* the government had rested. *United States v. Fowlie*, 24 F.3d 1059, 1069–70 (9th Cir. 1994). And because the continuance requested was indefinite, it was

8

reasonable to conclude that Elmezayen would be unable to obtain the testimony in a timely fashion. *United States v. Crawford*, 142 F. App'x 295, 296 (9th Cir. 2005). Thus, the decision not to continue the trial was not an abuse of the court's discretion.

Elmezayen also argues that the district court incorrectly concluded that he did not establish that "exceptional circumstances" existed for taking these Egyptian witnesses' depositions under Rule 15 of the Federal Rules of Criminal Procedure. The district court did not abuse its discretion in denying Elmezayen's request for depositions: his formal motion to take depositions was made after the government rested and was therefore late, the witnesses were known family members and so the district court was permitted to deem the delayed request untimely, *cf. United States v. Zuno-Arce*, 44 F.3d 1420, 1424–25 (9th Cir. 1995), and his proffer of the witnesses implied that some of the witnesses' testimony would be inadmissible impeachment evidence, *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1570 (9th Cir. 1989).

6. Finally, Elmezayen contends that even if none of his challenges individually warrants a reversal, his conviction cannot stand because of the cumulative effect of the errors. We reject this argument. Although the analysis above shows that the trial was not free of error, the record contains overwhelming, untainted evidence of Elmezayen's guilt, and thus provides more than "fair assurance that the jury was not substantially swayed by the errors" in reaching its

verdict.  *United States v. Lloyd*, 807 F.3d 1128, 1170 (9th Cir. 2015) (cleaned up).

Reversal is not required.

**AFFIRMED**